ELLIS, Judge.
This is a suit by plaintiff to evict the defendant from the property described as Lot No. 13 of Sq. No. 45 in South Baton Rouge and which is located on East Johnson Street. In this suit, plaintiff alleges her ownership of this property by virtue of notarial act of sale from her sister, Mattie Murray, of the latter’s undivided one-half interest, passed before H. Alva Brumfield, Notary, on the 8th day of February, 1946 *698 and duly recorded in the records of the Parish of East Baton Rouge.
The defendant in his answer resists eviction on two grounds. First, at the time his wife, Mattie Lewis Candóle Shaw, transferred her one-half interest in the property to her sister, Celia Murray, plaintiff herein, she was on that date married to Sidney Candóle and had no authority to make the transfer as the property was acquired during the existence of the community between Sidney Candóle and his wife, Mattie Lewis Candóle.
Second, “That not knowing how to read or write, the said Mattie Murray Lewis (Mattie Murray Candóle Shaw) was induced by fraudulent representations by Celia Murray to append her mark to said purported act of sale referred to in paragraph 6 above, in ignorance of what she was doing.”
The lower court with oral reasons dictated into the record at the end of a long trial rendered judgment dismissing plaintiff’s suit for eviction and nullifying the act of sale from Mattie Murray Lewis to Celia Murray by which the former conveyed her undivided one-half interest to the latter in tlie property which is the subject of this suit. It is from this judgment that the appeal was perfected by the plaintiff.
Although the record in' this case is voluminous and some of the testimony rather difficult to follow or understand due to the fact that most of the witnesses were illiterate and, as mentioned by the trial judge, of low level mentality, we believe that the record fully supports the following facts. It is shown that the plaintiff was a natural sister of the decedent, Mattie Murray Lewis Candóle Shaw, who was born in the Parish of East Baton Rouge in June, 1899, and who also died in the same parish on the 17th day of July, 1961. It is shown that the sister, Mattie Murray Lewis, lived in the Parish of East Baton Rouge until the year 1914, when she left and resided in the town of Napoleonville, Louisiana, where she met and married Sidney Candóle on the 12th day of January, 1918. During the year, 1924, Mattie Murray Lewis Candóle, who was still married to Sidney Candóle, returned to the City of Baton Rouge where she lived separate and apart from her husband, Sidney Candóle, until the year 1942. While the defendant attempted to prove that Mattie Murray Lewis Candóle had not remained exclusively in Baton Rouge and separated from her husband, we are convinced from the record that she resided alone, and never lived with or returned to her husband during this time. On October 3, 1938, the plaintiff herein and her sister, Mattie Murray Candóle, purchased jointly and severally from Robert A. Hart, the lot or portion of ground located in the City of Baton Rouge involved in this eviction suit. In this act of sale the decedent, Mattie Murray Candóle (at that time) declared herself to be a “femme sole”. The plaintiff built a house on one-half of the property and her sister also built a house on her half of the property with her personal earnings. Apparently both were industrious. Approximately four yea.s subsequent to the acquisition of the property by the two sisters and some time during the year 1942, Mattie Murray Candóle went back to Napoleon-ville, Louisiana, and again resided with her husband, Sidney Candóle, and they lived together until his death on the 25th day of June, 1948. On the 8th day of February, 1946, and while she was still living with her husband, Sidney Candóle, Mattie Murray Lewis Candóle, sold her one-half undivided interest in this property to her sister, Celia Murray, plaintiff herein, by cash act of sale in authentic form which was passed before H. Alva Brumfield, Notary, and duly recorded on February 13, 1946, in the records of the Parish of East Baton Rouge.
Also in this record is a petition by the defendant as the widower of Mattie Murray Lewis Candóle Shaw and sworn to by him in which he alleged that no children were born of the marriage between his deceased wife and her former husband, Sidney Candóle, nor did they ever adopt any *699 one or ever been adopted by anyone and that both his parents predeceased him by many years.
As to the first ground of attack by the defendant, under the testimony which we believe the record fully supports, Mattie Murray Candóle was and had been living separate and apart from her husband, Sidney Candóle, from 1924 to 1942. During this time she worked and earned enough not only to support herself but on the 3rd day of October, 1938 purchased her undivided interest in the property for cash, with her separate and paraphernal funds. Under Article 2334, LSA-Civil Code, the pertinent portion of which is as follows:
“ * * * The earnings of the wife when living separate and apart from her husband although not separated by judgment of the court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property,”
this undivided interest became her separate property.
As to the second ground of attack that due to the fact Mattie Murray Lewis Candóle did not know how to read or write she was induced by fraudulent representations of the plaintiff to put her mark to the purported act of sale passed before H. Alva Brumfield, Notary Public for the Parish of East Baton Rouge, on February 8, 1946, no citations or authorities are needed for the legal proposition that fraud is never, presumed but must be specifically alleged and proven by the one making such an allegation. This record contains absolutely nothing which would in any way indicate that Mattie was deceived, coerced or tricked into signing the act of sale she executed in 1946, transferring her undivided one-half interest in the property to her sister, the plaintiff herein. Moreover, the act of transfer was before a Notary and two witnesses, none of whom were called to testify concerning the circumstances surrounding the execution of the document. The defendant contends that he has proven fraud because of testimony to the effect that his deceased wife continued to live on the property after the execution of the deed to the plaintiff herein, and considered the property as her own, and made certain improvements thereon subsequent to the act of sale. Also, that plaintiff was more literate than her deceased sister and had full and complete charge of the latter’s affairs and business, even her bank account. There is no question but that plaintiff’s deceased sister continued to live in the home and made some improvements, and that the plaintiff did, in fact, handle all of Mattie’s affairs, including her bank account, and had there been any intention on her part to commit fraud, it would appear that since she had the power of attorney, she might have drawn Mattie’s funds out of the City National Bank, yet the record clearly shows that there remained in the account a balance of $588.81. In addition, Celia admits that she drew $800.00 from the account following Mattie’s death and has accounted for the bulk of the sum because $640.00 was paid for Mattie’s funeral expense, $35.00 for flowers, $15.00 for automobiles hired for Mattie’s funeral. She readily conceded she kept the remaining portion of the $800.00 withdrawn and also $100.00 paid by Society on account of Mattie’s death because she, Celia, had deposited $300.00 to the account and this was her way of retrieving said sum.
 In our opinion, all that the record shows is that Celia (plaintiff) did in fact handle Mattie’s affairs but we believe it falls far short of proving by clear and convincing evidence that Celia, by fraud or deception, secured Mattie’s signature on the sale. On the contrary, we believe it reflects a situation where, for reasons best known to the two sisters at the time, Mattie agreed to sign the sale voluntarily. While it may *700 be that the sum of $150.00 cash, stipulated in the sale, was never paid by Celia, even assuming her failure to have paid said amount, (which we would have to do as there is no proof that she did not pay it) this would not necessarily constitute the sale fraudulent. It might very well be that Mattie intended the sale to be a donation in disguise, although, of course, the record does not show this to be the case. Considering all the aspects of this case and after careful consideration of the record, we cannot brand plaintiff as having committed deliberate fraud.
Being of the opinion that the judgment of the lower court is clearly erroneous, the same is hereby reversed, annulled, and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of Celia Murray and against Leon Shaw, ordering him to vacate and to deliver over possession of the premises now occupied by him at municipal number 889 East Johnson Street, Baton Rouge, Louisiana, to Celia Murray and which property is more fully described as follows:
A certain parcel of ground situated in the Sixth Ward of the Parish of East Baton Rouge, Louisiana, about a mile South of the City of Baton Rouge, in that subdivision known as South Baton Rouge, and designated according to the official plan thereof on file in the office of the Clerk and Recorder for the said Parish of East Baton Rouge, as follows: Beginning at the southwest corner of Lot No. Thirteen (13) of Square No. Forty-five (45) thence proceeding southward along the projection of the west line of said lot No. Thirteen (13) a distance of One Hundred (100) feet and corner; thence eastward parallel to Monroe Street a distance of Forty (40) feet and corner; thence northward along the projection of the east line of said Lot No. Thirteen (13) a distance of One Hundred (100) feet and corner; thence westward along the south line of said Lot No. Thirteen (13) a distance of forty (40) feet to point of beginning; thus forming a plot of ground immediately south of and adjoining Lot No. Thirteen (13) of Square No. Forty-five (45) South Baton Rouge, said lot measuring Forty (40) feet on its north and south lines which are parallel to Monroe Street, and measuring One Hundred (100) feet on its east and west lines which are parallel to each other.
All costs are to be paid by the defendant, Leon Shaw.
Reversed and rendered.